## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **M.U., a minor, by her parents,**<br>**THERESA AND THOMAS URBAN,** *et al.*<br><br>              **Plaintiffs**<br><br>        **v.**<br><br>**DOWNINGTOWN**<br>**HIGH SCHOOL EAST,** *et al.*<br><br>              **Defendants** | **CIVIL ACTION**<br>**NO. 14-04877** |

**PAPPERT, J.**                                                             **AUGUST 19, 2015**

### MEMORANDUM

The Court is again called upon to determine whether Plaintiffs M.U. and her parents have stated a plausible claim that Defendants violated M.U.'s Fourteenth Amendment due process right to bodily integrity.  The Court rules that they have not.  The facts in the second amended complaint ("SAC," Doc. No. 38), when viewed in the light most favorable to Plaintiffs, do not describe conduct that rises to the level of a constitutional injury.  While the facts in the SAC may detail conduct that was negligent under state tort law, "the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation."  *DeShaney v. Winnebago Cnty Dep't of Soc. Serv.*, 489 U.S. 189, 202 (1989).  The SAC is therefore dismissed.  Inasmuch as Plaintiffs have had multiple attempts to state a claim and have failed, the Court rules that further amendment would be futile.  As a result, the dismissal is with prejudice.

### *Background*

M.U. alleges that she suffered a deprivation of her constitutional right to bodily integrity when her high school soccer coach, Defendant Craig Reed ("Reed"), failed to remove her from a

soccer scrimmage after she took a blow to the head.  (SAC ¶ 72.)  On April 27, 2015, the Court

dismissed M.U.'s claims for failure to state a claim upon which relief could be granted.  *See*

*M.U. v. Downingtown High Sch. E.*, --- F. Supp. 3d ----, No. 14-04877, 2015 WL 1893264, at *1-

3 (E.D. Pa. Apr. 27, 2015).  The opinion accompanying that dismissal contains a detailed

rendition of the procedural background and facts, which the Court will not repeat here.  *See id.*

Although the Court dismissed M.U.'s claims, it granted her leave to amend her

complaint.  *Id.* at *20.  M.U. filed the SAC on May 18, 2015.[1]  The SAC contains several

allegations that were not in the prior two complaints.  These additional allegations can be broken

into three categories.

First, M.U. adds an allegation that "Reed created a culture where the student athletes felt

immense pressure to play through their injuries, especially if they wanted to make [the] varsity

[soccer] team."  (SAC ¶ 18.)  Specifically, she alleges that when "M.U. would fall down or

become injured at practice [Reed] would require M.U. to remain playing in order to 'toughen her

up.'"  (*Id.* ¶ 17.)

Second, M.U. adds several allegations regarding her on-field injury.  She now alleges

that:

- Her violent head impact took place in the center of the field in front of both team benches and coaches.  (SAC ¶ 30.)
- Everyone watching the game in this area, including Reed, had a clear view of the impact and M.U. falling to the ground.  (*Id.* ¶ 31.)
- Once M.U. hit the ground, she was looking around aimlessly, and she appeared shocked and seemed to be unsure of how she got to the ground, according to at least one eyewitness.  (*Id.* ¶¶ 32, 36.)
- M.U. exhibited confusion as to what had just happened, according to an eyewitness.  (*Id.* ¶ 33.)
- M.U. spent a significant period on the ground.  (*Id.* ¶ 34.)

---

[1]     M.U. initially amended her complaint by stipulation and order dated October 29, 2014 (Doc. No. 14).

- The referee stopped play after the impact and assessed a penalty against the player who had struck M.U.  (*Id.* ¶¶ 35, 38.)
- The opposing team's coach and the players on the bench recognized that M.U. needed to be removed from the game and evaluated for a concussion.  (*Id.* ¶ 39.)
- Reed was in clear view of the impact and M.U.'s symptoms.  (*Id.* ¶ 40.)
- After "affirmatively decid[ing]" that M.U. "did not need an impact evaluation for concussion," Reed continued to yell plays and instructions to M.U. throughout the rest of the game.  (*Id.* ¶¶ 48, 50.)

Third, M.U. adds allegations regarding the policies and customs of Defendants Downingtown Area School District ("DASD") and Downingtown High School East ("DHSE") with respect to concussions.  She alleges that DASD and DHSE had a concussion policy in place that required a medical evaluation before any student athlete displaying concussion symptoms could return to play.  (*Id.* ¶ 42-47.)  She alleges, however, that DASD and DHSE had a custom of not enforcing this policy and allowing coaches to "push players to continue to play, despite injuries, including but not limited to concussions."  (*Id.* ¶ 67.)

DASD, DHSE, and Reed in his alleged capacity as an employee or agent of DASD or DHSE move to dismiss the SAC.[2]  (Mot. Dismiss, Doc. No. 39.)  They contend that even with the additional factual allegations, the SAC fails to state a claim upon which relief can be granted, and therefore move for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

***Legal Standard***

As noted by the Court in dismissing the first amended complaint, a Rule 12(b)(6) motion tests the sufficiency of the factual allegations in the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the

---

[2]     On July 2, 2015, the Court dismissed the SAC as to Defendants Total Soccer, LLC and Reed in his alleged capacity as an employee or agent of Total Soccer, LLC.  (Doc. No. 46.)

district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. Then, it "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). When making this determination, the court can consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The district court must "construe the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

***Discussion***

M.U.'s Section 1983 Claim under the State Created Danger Theory

M.U. alleges that Reed significantly increased the risk that M.U. would be injured by keeping her in the game after she took a blow to the head. (SAC ¶ 80.) To state a viable § 1983 claim under the state-created danger theory, M.U. must allege facts to show that (1) her injury was foreseeable and fairly direct, (2) Reed acted in a manner that shocks the conscience, (3) there is a relationship between M.U. and the state, and (4) Reed, as the state actor, affirmatively used his authority to create an opportunity that otherwise would not have existed for M.U.'s injury to occur. *See Phillips*, 515 F.3d at 238-40; *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir. 1995).

In its prior opinion, the Court surveyed the case law surrounding the state-created danger theory generally, and its specific application to injuries suffered while playing high school sports. *See M.U.*, 2015 WL 1893264, at *4-8. The Court then determined that the allegations in the first amended complaint failed to show conscience-shocking behavior (the second element) and an affirmative act (the fourth element). *Id.* at *9.

4

The additional allegations in the SAC do not change the Court's analysis or conclusion.[3] M.U. still fails to allege facts to show that Reed's behavior shocks the conscience. M.U.'s additional allegations state that play was stopped and a penalty was assessed due to the blow to her head. (SAC ¶¶ 35, 38.) She also alleges that, according to at least one eyewitness, M.U. was "looking around aimlessly," "exhibited confusion," "appeared shocked," and "seemed to be unsure of how she got to the ground." (*Id.* ¶¶ 32, 33, 36.)

Accepted as true, these allegations fall short of the behavior exhibited in high school concussion cases that survived the motion to dismiss stage. *See, e.g.*, *Alt v. Shirey*, No. 11-cv-0468, 2012 WL 726579, at *12 (W.D. Pa. Feb. 7, 2012), *report and recommendation adopted*, 2012 WL 726593 (W.D. Pa. Mar. 1, 2012) (defendants were aware that plaintiff had sustained several head injuries and not only put him back into the game, but also ordered him to deliver a substantial hit to an opposing player); *Mann v. Palmerton Area Sch. Dist.*, 33 F. Supp. 3d 530, 539 (M.D. Pa. 2014) (defendants forced plaintiff to continue football practice after he was hit in the head, despite plaintiff exhibiting erratic behavior and telling the coaching staff that he felt numb and disoriented).

M.U. also fails to allege that Reed took any affirmative act. The substance of her claim is that Reed *failed to act* by not taking her out of the game and performing concussion testing. (*See* SAC ¶¶ 72-74.) Yet "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright v. Westmorland Cnty.*, 443 F.3d 276, 282 (3d Cir. 2006); *see also Phillips*, 515 F.3d at 236 ("Our jurisprudence requires that Phillips allege an affirmative action, rather than inaction or omission."). Moreover, M.U.'s allegation that Reed yelled instructions to her throughout the remainder of the game is insufficient to meet the affirmative

---

[3]       Nor has the Court uncovered any new case law, within the Third Circuit or elsewhere, that would change its analysis or conclusion.

action requirement.  This allegation does no more than state that Reed continued to coach the game after failing to remove M.U. from it.  Yet by M.U.'s own allegations, it was Reed's failure to remove her from the game and evaluate her for a concussion, not Reed's continued coaching, that caused her alleged injury.  (*See* SAC ¶¶ 72-74.)  M.U.'s state-created danger claim is therefore dismissed.[4]

M.U.'s Municipal Liability Claim

"[C]ivil rights plaintiffs suing a municipal entity under 42 U.S.C. § 1983 must show that their injury was caused by a municipal policy or custom."  *L.A. Cnty., Cal. v. Humphries*, 562 U.S. 29, 30 (2010); *see also Monell v. Dept. of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978). To establish § 1983 liability against a municipal defendant, a plaintiff must first identify the policy or custom.  *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000).  "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (quotations omitted).  Customs, on the other hand, are practices that are "so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Monell*, 436 U.S. at 690 (quotation omitted).

"Once a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged."  *Berg*, 219 F.3d at 276 (quotation omitted).  To show causation where the alleged policy or custom does not facially violate constitutional rights, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious

---

[4]     Because the Court determines that the allegations in the SAC fail to allege that Reed is liable for a violation of M.U.'s constitutional right to bodily integrity, the Court does not address Reed's argument that his is entitled to qualified immunity.

consequences." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.*

Here, M.U. alleges that DASD and DHSE had a custom "of allowing the high school soccer coaches, including Coach Reed, to push players to continue to play, despite injuries, including but not limited to concussions." (SAC ¶ 67.) She also alleges that DASD and DHSE had a custom of failing to train coaches regarding the signs, symptoms, and dangers of concussions. (*Id.* ¶ 87.) The second amended complaint fails to state a claim for municipal liability under either theory.

First, M.U. fails to allege facts to show that DASD and DHSE had a custom that exhibited deliberate indifference to the constitutional rights of student athletes. "Custom requires proof of knowledge and acquiescence by the decisionmaker." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Here, M.U. does no more than make the conclusory allegation that DASD and DHSE "through School District Officials, had knowledge that players were sustaining concussions and were being put back into play by Coach Reed and previous soccer coaches at [DHSE]." (SAC ¶ 78.) This statement is a "bare-bones" conclusory allegation without any factual support, which is insufficient to survive a motion to dismiss. *Fowler*, 578 F.3d at 210 ("[C]onclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'") (quoting *Iqbal*, 556 U.S. at 678).

The SAC also fails to allege facts to state a plausible claim for municipal liability under a failure to train theory. A plaintiff can demonstrate a failure to train under a "single incident" theory or a "pattern of violations theory." Here, M.U. proceeds under the pattern of violations theory. (Pls.' Opp'n Br. at 19, Doc. No. 41.) She alleges that DASD and DHSE violated her

constitutional rights by "allowing improperly trained coaches to be responsible for the safety and well-being of student athletes." (SAC ¶ 87.) She argues that she has adequately alleged a pattern of constitutional violations because she has stated that a "significant number of girls" who played sports at DHSE are "battling the life-changing consequences of concussion injuries." (SAC pp. 1-2.) While this conclusory allegation might allege a pattern of injuries, it does not show a pattern of constitutional violations. Very few on-field injuries amount to constitutional violations. M.U.'s vague reference to prior injuries, without additional context, fails to show a pattern of constitutional violations supportive of a failure to train claim.

Plaintiffs' Claim for Recovery of Medical Costs

Plaintiffs Theresa and Thomas Urban, individually, seek reimbursement from all Defendants for medical care and health-related costs they have incurred on M.U.'s behalf as well as those they may incur until M.U. turns 18. This claim is derivative of Defendants' liability to M.U. (*See* SAC ¶ 99 ("To the extent Defendants are liable to Plaintiff M.U., a minor, Defendants are also liable to her parents . . . in that they are responsible for their daughter's medical care and other health related costs and expenses until she reaches age 18.")). Because none of M.U.'s claims on which to predicate this claim survive, it is dismissed as well.

Leave to Amend

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In civil rights cases such as this one, leave to amend must be granted *sua sponte* before dismissing the complaint. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). The Court finds that further amendment would be futile. M.U. has now had three attempts to state a claim for § 1983 liability against

DASD, DHSE, and Reed.  She has failed to do so, even after the Court detailed the deficiencies in her first amended complaint.  Under such circumstances, it is reasonable for the Court to conclude that M.U. will be unable to marshal sufficient facts to state a plausible claim for relief if given an additional opportunity to amend.  *See, e.g.*, *Werner v. Cnty. of Northampton*, No. 07-cv-1910, 2008 WL 2700287, at *3 (E.D. Pa. July 9, 2008) ("Plaintiff has thus had three opportunities to plead facts that support the legal claims he asserts, and his continued inability to do so demonstrates that further amendment would be futile.").

An appropriate order follows.


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.